Mr. Charles L. Lester Auditor General Office of the Auditor General Holland Building, Room 231 Tallahassee, Florida 32301
Dear Mr. Lester:
This is in response to a request for an opinion from your predecessor in office on the following questions:
 1. IS THE MONEY IN THE FLORIDA RETIREMENT SYSTEM TRUST FUND "STATE FUNDS" AS THE TERM IS USED IN s. 4(e), ART. IV, STATE CONST.?
 2. ARE THE SECURITIES PURCHASED WITH MONEY FROM THE FLORIDA RETIREMENT SYSTEM TRUST FUND "STATE SECURITIES" AS THE TERM IS USED IN s. 4(e), ART. IV, STATE CONST.?
 3. WHEN SECURITIES ARE ACQUIRED WITH MONEY FROM THE FLORIDA RETIREMENT SYSTEM TRUST FUND, WHO OWNS THE SECURITIES, IN WHAT NAME MUST THEY BE REGISTERED AND IN WHOSE POSSESSION MUST THEY BE KEPT?
 4. WHAT IS THE DUTY OF THE TREASURER WITH REGARD TO MONEY OF THE FLORIDA RETIREMENT SYSTEM TRUST FUND:
A. WHEN THE MONEY IS IN THE SYSTEM TRUST FUND?
 B. WHEN THE MONEY HAS BEEN DISBURSED FROM THE SYSTEM TRUST FUND AND IS IN THE POSSESSION OR UNDER THE CONTROL OF THE STATE BOARD OF ADMINISTRATION PRIOR TO INVESTMENT?
 5. WHAT IS THE LIABILITY OF THE TREASURER IN REGARD TO EACH OF THE TWO SITUATIONS DESCRIBED IN QUESTION FOUR?
 6. WHAT IS THE DUTY AND LIABILITY OF THE TREASURER WITH REGARD TO SECURITIES PURCHASED WITH MONEY FROM THE FLORIDA RETIREMENT SYSTEM TRUST FUND? MUST THE TREASURER "KEEP" THE SECURITIES AS THE TERM IS USED IN s. 4(e), ART. IV, STATE CONSTITUTION? IF YES, WHAT ACTIVITY DOES THE TERM "KEEP" CONTEMPLATE? IS THE DUTY DELEGABLE?
 7. WHO IS THE GOVERNMENTAL PARTY OR WHO ARE THE GOVERNMENTAL PARTIES ENTERING INTO EACH OF THE FOLLOWING CONTRACTS:
A. DEMAND ACCOUNT ATLANTIC NATIONAL BANK;
B. SECURITIES CUSTODY AND SERVICING AGREEMENT;
C. SECURITIES LENDING AGREEMENT;
D. THREE PARTY AGREEMENT.
 DO THE GOVERNMENTAL PARTIES HAVE CONSTITUTIONAL OR STATUTORY AUTHORITY TO ENTER INTO THE CONTRACTS, AND ARE THE CONTRACTS WITHIN THE SCOPE OF THEIR AUTHORITY?
 8. CHAPTER 280, F.S., REQUIRES QUALIFIED PUBLIC DEPOSITORIES OF PUBLIC MONEY TO DEPOSIT ELIGIBLE COLLATERAL WITH THE TREASURER OR, WHEN APPROVED BY THE TREASURER, WITH ANOTHER BANK. ARE THERE ANY SIMILAR PROVISIONS FOR THE DEPOSIT OF COLLATERAL WITH THE TREASURER WHEN THE TREASURER RELINQUISHES PHYSICAL CUSTODY OF SECURITIES PURCHASED WITH FLORIDA RETIREMENT SYSTEM TRUST FUND MONEY TO A BANK FOR SAFEKEEPING OR FOR THE COLLECTION OF PRINCIPAL OR INTEREST OR DIVIDENDS OR PROCEEDS OF SALE OR OTHER PURPOSES SUCH AS THE LENDING BY THE BANK, OF SECURITIES TO SECURITIES' DEALERS?
 9. SINCE DIVIDENDS, INTEREST, PROCEEDS OF THE SALE OF SECURITIES, CASH AS COLLATERAL FOR LOANED SECURITIES, ETC. FLOW INTO THE CUSTODY ACCOUNT, A BANK ACCOUNT MAINTAINED IN CITIBANK BY THE SBA ACCOUNT PURSUANT TO THE SECURITIES CUSTODY AND SERVICING AGREEMENT, MUST:
 A. CITIBANK BE A QUALIFIED DEPOSITORY AS DEFINED IN s. 280.02(3), F.S.?
 B. ELIGIBLE COLLATERAL BE DEPOSITED WITH THE TREASURER OR ANOTHER BANK IF APPROVED BY THE TREASURER?
 10. WHAT EFFECT, IF ANY, DID THE ADDITION OF s. 215.50(3), F.S., BY s. 6, CH. 80-242, LAWS OF FLORIDA, HAVE ON s. 215.50(1), F.S., AS THE TWO SUBSECTIONS RELATE TO CUSTODY AND POSSESSION OF SECURITIES PURCHASED WITH FLORIDA RETIREMENT SYSTEM TRUST FUND MONEY?
 11. IN VIEW OF THE SECURITIES CUSTODY AND SERVICING AGREEMENT AND THE SECURITIES LENDING AGREEMENT AND ASSUMING THE WORST CASE SCENARIO OF FAILURE OF THE BANK OR DEPOSITORY, WHAT IS THE LEGAL STATUS OF FLORIDA WITH REGARD TO RECOVERY OF THE FRS SECURITIES AND MONEY WHICH HAVE BEEN DELIVERED TO THE BANK PURSUANT TO THE THE SECURITIES CUSTODY AND SERVICING AGREEMENT AND AUTHORIZED TO BE LOANED PURSUANT THE SECURITIES LENDING AGREEMENT? FOR EXAMPLE, IS THE STATE OF FLORIDA A CREDITOR OF THE BANK AND, IF SO, IS IT A GENERAL OR SECURED CREDITOR?
 12. IN THE EVENT THAT INSUFFICIENT ASSETS ARE IN THE SYSTEM TRUST FUND TO PAY THE BENEFITS DUE TO MEMBERS OR BENEFICIARIES, WHAT IS THE LIABILITY OF THE STATE OF FLORIDA TO THE MEMBERS OR BENEFICIARIES?
QUESTIONS ONE AND TWO
Your first two questions are interrelated and therefore are answered together. Section (4)(e), Art. IV, State Const., provides:
 The treasurer shall keep all state funds and securities. He shall disburse state funds only upon the order of the comptroller. Such order may be in any form and may require the disbursement of state funds by electronic means or by means of a magnetic tape or any other transfer medium.
You have cited this provision of the Constitution in your question and in legal memoranda accompanying the opinion request. The legal issues presented are whether the moneys in the Florida Retirement System Trust Fund are "state funds," and whether consequently, securities purchased with such money would be "state securities" within the meaning of those terms as used in this constitutional provision.
Several judicial decisions have discussed the nature of legislatively created trust funds and the constitutional manner and procedure for such moneys' disbursement. In Lainhart v. Catts,75 So. 47 (Fla. 1917), the appellant, an owner of several tracts of land located in the Everglades drainage district, brought suit to enjoin the assessment of taxes on the property in question. The landowner contended that the expenditure of assessment proceeds without a special appropriation violated s. 4 of Art. IX, State Const. 1885, which provided: "No money shall be drawn from the treasury except in pursuance of appropriations made by law." See, s. 1(c), Art. VII, State Const. 1968, containing identical language. Rejecting appellant's contention, the Court stated that the purpose of the constitutional provision was to prevent the expenditure of public funds without the consent of the people, by their representatives in legislative acts. "An appropriation may be made by setting apart and specially appropriating the money derived from a particular source of revenue to a particular use."75 So. at 54. The Court determined that the money raised by the special assessment was not paid into the general treasury of the state but was paid into a special fund, placed in the custody of the state treasurer to be expended for certain specified purposes designated by the act. Thus, the Court concluded that the Legislature intended to, and did, appropriate the revenues of the special assessment to carry out the purpose of the acts.
In State ex rel. Watson v. Caldwell, 23 So.2d 855 (Fla. 1945), the Florida Supreme Court had before it the question of whether expenditures of the State Improvement Commission of moneys collected from rentals, tolls and charges for the use of public buildings violated s. 4 of Art. IX of the 1885 Constitution. The Supreme Court concluded that the funds involved in this act were not funds "from the treasury" as contemplated by that constitutional provision. While the State Treasurer was holder and dispenser of such funds, the Treasurer, in the Court's opinion, was merely the custodian of such funds and did not hold them as State Treasurer. Thus the Court concluded that the Commission derived its revenue from various sources which were held in trust for the State for the purposes set forth in the statute, that holders of its obligations had no recourse against state funds, and that the Commission's funds could be withdrawn on warrants signed by the chairman of the Commission and counter-signed by its Secretary. See also, State v. Florida State Improvement Commission, 30 So.2d 97, 99 (Fla. 1947), in which assessments originally collected from self insurer employers and employer workmen's compensation insurance carriers and paid into the administrative fund of the state workmen's compensation division of the Florida Industrial Commission were pledged and used to liquidate revenue certificates issued to finance the building in which the Workmen's Compensation Division was housed. Section440.50(1), F.S. 1941, in establishing the special fund in the state treasury, in pertinent part, provided: "Such fund shall be administered by the [Florida Industrial] commission. The state treasurer shall be the custodian of such funds and all moneys and securities in such fund shall be held in trust by such treasurer and shall not be the money or property of the state." (e.s.) Such funds, the Court concluded, never reached the State Treasury as state funds; were never available for the general purpose of the state but were solely for the use of the Commission. The Court thus held that such funds were trust funds, with the State Treasurer being the mere custodian of them: "Under such a state of facts we can conceive of no theory by which these funds could be called state funds. . . ." And see, O'Malley v. Florida Insurance Guaranty Association, 257 So.2d 9, 12 (Fla. 1971), in which the Court concluded that funds derived by the Florida Insurance Guaranty Association from assessment of solvent insurers or from claims paid to the association by receivers of insolvent insurers were "not in the class of state tax revenue or general funds and do not come within the ambit of the constitutional provisions that govern the deposit and disbursement of state tax or general revenue funds."
In AGO 78-148, this office considered the question of whether municipal pension trust funds for municipal firemen and policemen under Chs. 175 and 185, F.S., respectively, were "public or municipal moneys" within the purview of s. 659.24(1), F.S. The funds in these municipal pension trust funds consisted in part of moneys derived from municipal excise or license taxes levied upon fire insurance companies and other contributions made by municipalities and their employees. The opinion concluded that since, among other things, the pension funds were authorized by a general law and funded by excise tax revenues and contributions of other municipal funds and employee contributions, and since such funds or moneys were to be returned to the municipalities, less the return of certain contributions, upon termination of the pension trust funds, the municipal pension trust funds in question were "public moneys," or public funds.
The Florida Retirement System for public employees and officers is contained in Ch. 121, F.S. This chapter of the Florida Statutes consolidated the existing retirement system and laws, but preserved the rights of members of preexisting retirement systems. See, s. 1, Ch. 70-112, Laws of Florida; s. 121.011, F.S. The Florida Retirement System is administered by the Division of Retirement of the Department of Administration. Sections 121.025
and 121.031, F.S., as amended by s. 64, Ch. 86-168, Laws of Florida. The "System Trust Fund" means the trust fund established in the State Treasury by Ch. 121 for the purpose of holding and investing the contributions paid by members and employers and paying the benefits to which members or their beneficiaries may become entitled. Section 121.021(36), F.S. Cf., s. 215.32(1), F.S. Section 121.051(1)(a), F.S., provides:
 The provisions of this law shall be compulsory as to all officers and employees, except legislators who meet the requirements of s. 121.052(1)(c), who are employed on or after December 1, 1970, of an employer other than those referred to in paragraph (2)(b), and each officer or employee, as a condition of employment, shall become a member of the system as of his date of employment, except that a person who is retired from any state retirement system and is reemployed on or after December 1, 1970, shall not be permitted to renew his membership in any state retirement system except as provided in s. 121.091(4)(e), for a person who recovers from disability, and s. 121.091(9)(d), for a person who is elected to public office. Officers and employees of the University Athletic Association, Inc., a nonprofit association connected with the University of Florida, employed on and after July 1, 1979, shall not participate in any state-supported retirement system. (e.s.)
See also, s. 121.051(2), F.S., which provides for certain optional participation by members of other preexisting systems.
Originally, funding of the system trust fund was on a matching contribution basis between the members and their employers. See, s. 7, Ch. 70-112, Laws of Florida. Effective January 1, 1975, the retirement system was made noncontributory, that is, the members after this date have made no contribution to the system trust fund. The system is presently funded by a payroll contribution rate and is paid for by all participating employers on behalf of their employees. See, s. 121.071, F.S., as amended by s. 3, Ch. 86-137, and s. 66, Ch. 86-168, Laws of Florida. A primary source of funding the system trust fund in the percentages specified in s. 121.071, F.S., as amended, is state appropriations made to each state agency from the general revenue fund of the state. Subsection (3) of s. 121.061, F.S., in pertinent part, provides: "The appropriations provided each state agency, beginning with the 1970-1971 fiscal year and each fiscal year thereafter, shall include sufficient amounts to pay the matching contributions for social security and retirement as required by this chapter." However, "[n]o state agency, whether its funds are provided by state appropriations or otherwise, shall employ any person or maintain any person on its payroll unless it has allotted for such person sufficient funds to meet these required payments." Id.
In addition to state officers and employees, officers and employees of other governmental units are members of the Florida Retirement System. "Officer or employee" is defined by s.121.021(11), F.S., to mean "any person receiving salary payments for work performed in a regularly established position and, if employed by a city or special district, employed in a covered group." Subsection (10) of that statute defines "[e]mployer" to mean "any agency, branch, department, institution, university, institution of higher education, or board of the state, or any county agency, branch, department, board, district school board, or special district of the state, or any city of the state which participates in the system for the benefit of certain of its employees." See, s. 121.051, F.S., supra, which provides for participation in the Florida Retirement System, specifically subsection (2)(b)1., which states: "The governing body of any city or special district in the state may elect to participate in the system upon proper application to the administrator and may cover all or any of its units as approved by the Secretary of Health and Human Services and the administrator." According to the State Retirement Director of the Division of Retirement, Department of Administration, over 100 cities and over 300 special districts currently participate in the retirement system; altogether, more than 1100 different autonomous public entities participate in the Florida Retirement System. See also, s. 121.046, F.S., providing for the merger of the Judicial Retirement System into the Florida Retirement System Act.
The moneys in the Florida Retirement System Trust Fund are derived from a variety of state and local governmental services as well as from individual contributions when the retirement system was contributory. The absence of judicial interpretation and guidance concerning the legal nature and characterization of moneys in the Florida Retirement System Trust Fund which are not derived from state appropriated dollars makes a legal opinion regarding such moneys conjectural at best. Pursuant to agreement with your office and other state agencies involved in this matter, this opinion is expressly limited to a consideration of those moneys in the system trust fund which represent contributions made to the fund with state dollars pursuant to ss. 121.061 and 121.071, F.S. Moneys in the system's trust fund derived from other local governmental sources and individual contributions will be treated as though they were state moneys for purposes of this opinion. With respect to that portion of system trust fund that is derived from state contributions, and in the absence of judicial guidance to the contrary, I am of the opinion that such state retirement system trust funds are "state funds." Firstly and most importantly the moneys are derived from the general revenue fund or other state agency sources and are credited to the system trust fund in the State Treasury. The state, through the State Board of Administration composed of the Governor, the Treasurer, and the Comptroller, retains control of such money until such time as it becomes vested in and disbursed to the beneficiaries. As a consequence of this conclusion, as to that portion of the system trust fund which represents state contributions to the fund, I am also of the opinion that the securities purchased with money from the Florida Retirement System Trust Fund are "state securities."
QUESTION THREE
You ask who owns the securities that are acquired with money from the Florida Retirement System Trust Fund. The word "own" is a general term whose meaning varies according to the context of its use. 67 C.J.S. Own p. 925. Black's Law Dictionary p. 996 (5th ed. 1979) defines the word as meaning "[t]o have good legal title; to hold as property; to have a legal or rightful title to; to have; to possess." Black's, supra, defines owner as: "The person in whom is vested the ownership, dominion, or title of property; proprietor. . . . The term is, however, a nomen generalissimum, and its meaning is to be gathered from the connection in which it is used, and from the subject-matter to which it is applied." Black's Law Dictionary, citing, Restatement, Second, Trusts, s. 2, Comment (d); Restatement of Property, s. 10, goes on to state:
 The term "owner" is used to indicate a person in whom one or more interests are vested for his own benefit. The person in whom the interests are vested has "title" to the interests whether he holds them for his own benefit or for the benefit of another. Thus, the term "title," unlike "ownership," is a colorless word; to say without more that a person has title to certain property does not indicate whether he holds such property for his own benefit or as trustee.
The Florida Retirement System, and the establishment of the Florida Retirement System Trust Fund for the purposes set forth in Ch. 121, F.S., is in the nature of a trust established by the state to provide the retirement benefits to such persons as may become entitled thereto. Not only are state funds contributed to the system trust fund as provided in s. 121.061, F.S., but various units of local governments contribute funds to the trust fund for investment by the State Board of Administration pursuant to ss.215.44-215.53, F.S. See, in regard to county, municipal and special district participation in the Florida Retirement System, ss. 121.011, 121.021(2) and (10), and 121.051(2)(b)1., F.S. Section 215.50(3), F.S., in setting forth certain duties of the Treasurer refers to the "securities owned by the Florida Retirement System Trust Fund." And see, s. 215.44(1) and (7), F.S. The retirement system trust fund itself cannot, except in a general sense be said to "own" the securities in question. Because monies deposited in the system trust fund are derived from a variety of state and local governmental sources and there are a number of vested individual beneficiaries, it is impossible to conclude for all purposes that a single governmental entity owns the securities purchased with money from the system trust fund. The State of Florida as well as numerous state and local governmental units have legal ownership interests in the fund and securities purchased therefrom. Vested beneficiaries have equitable ownership interests in the fund and in such securities. See generally, 56 Fla.Jur.2d Trusts s. 1. No single, comprehensive conclusion can therefore be reached as to who "owns" the securities. The type of ownership and the particular circumstances of the issue presented would have to be examined in order to reach a more specific conclusion.
You question what name must such securities be registered and in whose possession must they be kept. Although your letter of inquiry does not elaborate on the investment circumstances giving rise to your request for an opinion, accompanying materials and memoranda of law from your office, the Treasurer's Office and the State Board of Administration shed some light on some of the problems involved.
Available funds of the retirement system trust fund are to be invested and reinvested by the State Board of Administration in accordance with the provisions of ss. 215.44-215.53, F.S. Section121.151, F.S. The State Board of Administration, created by the the State Constitution, is composed of the Governor, as chairman, the State Treasurer, and the State Comptroller. See, s. 16, Art. IX, State Const. 1885, as continued by s. 9, Art. XII, State Const.; s. 215.44, F.S., as amended by s. 52, Ch. 86-152 and s. 1, Ch. 86-236, Laws of Florida. The Legislature has statutorily delegated to the S
 Except when otherwise specifically provided by the State Constitution and subject to any limitations of the trust agreement relating to a trust fund, the Board of Administration, hereinafter sometimes referred to as "board," composed of the Governor as chairman, the Treasurer, and the Comptroller, shall invest all the funds in the System Trust Fund, as defined in s. 121.021(36), and all other funds specifically required by law to be invested by the board pursuant to ss. 215.44-215.53 to the fullest extent that is consistent with the cash requirements, trust agreement, and investment objectives of the fund.
Thus, the State Board of Administration, for purposes of investment of available moneys in the system trust fund, acts as an agent of the Florida System Trust Fund. And see, s. 215.44(7), F.S., providing that "[i]nvestment and debt purchasing procedures and contracts of funds held in trust by the State Board of Administration, whether directly or incidentally related to the investment or debt transactions, are exempt from the provisions of chapter 287." (e.s.)
Subsection (2)(a) of s. 215.44 provides that the Board of Administration shall have the power to make purchases, sales, exchanges, investments, and reinvestments for and on behalf of the funds specified in subsection (1) and that it is the duty of the board to see that moneys invested under the provisions of ss.215.44-215.53, F.S., are at all times handled in the best interests of the state. Section 215.47, F.S., as amended by s. 50, Ch. 86-152 and s. 3, Ch. 86-236, Laws of Florida, sets forth the permissible investments and authorized securities that the State Board of Administration may invest available funds of the system trust fund. Subsection (6) of s. 215.47 provides that "[i]nvestments in any securities authorized by this section may be under repurchase agreements or reverse repurchase agreements."
It is my understanding from supplemental materials provided this office that generally when other investment activities are not involved, most securities purchased are registered in the name of the State Board of Administration, State of Florida. This would appear to be the proper way to register such securities since the Board of Administration pursuant to statutory authority is acting as the agent of the Florida Retirement System Trust Fund for purposes of investing available moneys of the system trust fund. In regard to making funds available to the State Board of Administration for investment purposes, see, s. 215.49, F.S. In a trust arrangement, the trustee is the person who holds the legal title to the property held in trust for the benefit of the beneficiary or beneficiaries. See, 76 Am.Jur.2d Trusts s. 111. The legal title held is subject to all statutory provisions and limitations. In this inquiry, the funds in question are held subject to the provisions of ss. 215.44-215.53, F.S. I am of the opinion that it is proper in the ordinary course of investment of available funds of the retirement system trust fund in securities authorized under s. 215.47, F.S., that the name registered on such securities should be the State Board of Administration, State of Florida, except where otherwise authorized by statute.
See, e.g., s. 215.50(4), F.S., which provides: "Securities that the board selects to use for options operations under s. 215.45 or for lending under s. 215.455 shall be registered by the Treasurer in the name of a third-party nominee in order to facilitate such operations."
In AGO 77-62, this office addressed the question of whether the State Board of Administration was prohibited from acquiring ownership of direct obligations of the United States Government when such securities are not serialized or otherwise individually identified but rather were issued by means of a book entry of record at the federal reserve bank of issue and at another banking institution from which the purchase in question was made. That opinion concluded that the new method was not in conflict with any statutory requirement pertaining to the need to maintain accountability and protection or safety of securities deposited in banking institutions for safekeeping, and that therefore there was no obstacle imposed by Ch. 215, F.S., to such purchase of treasury bills, or any other form of direct or guaranteed obligations of the United States, issued, recorded, and accounted for by means of the new so-called book-entry system, even though such obligations are not individually issued and serialized.
In the absence of a more specific inquiry regarding a particular type of investment, I am unable to respond other than to comment generally that the ownership, registration and possession of securities purchased with money from the retirement system trust fund must be in accordance with the requirements of ss.215.44-215.53, F.S. Section 215.44(2), F.S., imposes upon the Board of Administration the duty "to see that moneys invested under the provisions of ss. 215.44-215.53 are at all times handled in the best interests of the state." The issue of the proper "keeping" of securities purchased with moneys from the system trust fund is more completely addressed in Question Six.
QUESTION FOUR
The Florida Retirement System Trust Fund as discussed earlier is a trust fund established in the State Treasury by Ch. 121, F.S., for purposes of holding and investing retirement contributions and for paying benefits to which beneficiaries have become entitled. Section 121.021(36), F.S. The Treasurer has a duty to account for all state funds and securities, which includes trust funds in the retirement system trust fund. Section 18.07, F.S. Section215.32(1), F.S., places an affirmative duty on the Treasurer as to trust funds in the State Treasury, providing: "All moneys received by the state shall be deposited in the State Treasury unless specifically provided otherwise by law and shall be deposited in and accounted for by the Treasurer and the Department of Banking and Finance within the" funds enumerated therein, which include trust funds. As to trust funds, paragraph (b)1. of s. 215.32(2), in pertinent part, provides that "[t]he trust funds [in the State Treasury] shall consist of moneys received by the state which under law or under trust agreement are segregated for a purpose authorized by law." And paragraph (2)(b)3. provides:
 All such moneys are hereby appropriated to be expended in accordance with the law or trust agreement under which they were received, subject always to the provisions of chapter 216 relating to the appropriation of funds and to the applicable laws relating to the deposit or expenditure of moneys in the State Treasury.
The State Treasurer therefore has the responsibility to deposit retirement system revenue in the State Treasury and account for such revenue in the Florida Retirement System Trust Fund. Subsection (1) of s. 18.10, F.S., goes on to provide:
 The Treasurer, acting with the approval of the State Board of Administration (hereinafter referred to as the "board"), shall deposit the money of the state or any money in the State Treasury in such qualified public depositories of the state as will offer satisfactory collateral security for such deposits, pursuant to chapter 280. It is the duty of the Treasurer to keep the board advised as to the amounts of such money available at all times; and it is the duty of the board, consistent with the cash requirements of the state, to keep such money fully invested or deposited in interest-bearing time deposits or savings accounts as provided herein in order that the state may realize maximum earnings and benefits to the economy.
These statutes delineate the duty of the Treasurer as to money in the Retirement System Trust Fund.
Sections 215.44-215.53, F.S., address the disbursement and investment of available funds in the Retirement System Trust Fund. As set forth above, s. 121.151, F.S., provides that the State Board of Administration shall invest and reinvest available funds of the system trust fund in accordance with the provisions of ss.215.44-215.53, F.S. And see, s. 215.44, F.S., as amended, providing in pertinent part that the Board of Administration shall invest all funds of the system trust fund, as defined in s.121.021(36), F.S., to the fullest extent that is consistent with the cash requirements, trust agreement, and obligations of the fund.
The Treasurer sits as a member of the Board. See, s. 215.44(2), F.S. Section 215.49(1), F.S., provides:
 It shall be the duty of each state agency now or hereafter charged with the administration of the System Trust Fund, as defined in s. 121.021(36), or other funds specifically required by law to be invested by the State Board of Administration pursuant to ss. 215.44-215.53 to make such moneys available for investment as fully as is consistent with the cash requirements of the particular fund and to transfer such moneys to the board for investment.
 And see, s. 215.49(2), F.S., which provides that monthly, and more often as circumstances require, each such agency shall notify the board "of the amount available for investment, the moneys shall be transferred to the board, and the investment shall be made by the board." When funds of the system trust fund are in the possession or control of the Board of Administration for investment under ss. 215.44-215.53, such funds are invested pursuant to the directions of the board. The statutes are silent as to the procedures for the handling of funds available for investment purposes which have been transferred from the retirement system trust fund to the Board of Administration for investment. Cf., s. 215.50(2), F.S., which provides:
 It shall be the duty of the board or of the Treasurer, as custodian of the securities of the board, to collect the interest or other income on, and the principal of, such securities in their custody as the sums become due and payable and to pay the same, when so collected, into the investment account of the fund to which the investments belong.
It is my understanding from information supplied to this office by the State Board of Administration that an investment account or accounts are maintained by the Board of Administration at Atlantic National Bank of Florida, located in Jacksonville, Florida. Moneys that are available for investment purposes are transferred by the Treasurer from the system trust fund to the board's investment account with Atlantic National. When available moneys have been transferred to the Board of Administration for investment, the Treasurer's duties in relation to such funds are then derived from his position as a member of the Board of Administration, and from any affirmative duties that are placed by the Board of Administration upon the Treasurer as treasurer ex officio of the board. See, s. 215.50, F.S.
QUESTION FIVE
You have questioned the liability of the Treasurer in regard to the two situations described in Question Four. The question of the Treasurer's liability is dependent upon factual circumstances which are unknown and therefore involve mixed questions of law and fact which this office cannot resolve. However, generally the liability of public officers with respect to the handling of public funds is subject to a few well-recognized principles of law. First, the handling of public funds must be done in accordance with statutes directing their deposit and disbursement. In Palbicke v. Lee, 172 So. 481 (Fla. 1937), the Florida Supreme Court stated: "It is well settled that a public official charged with the custody and control of public funds may only pay out the same in the manner provided by statute where the statute directs the manner and method of such payment." And see, Spencer v. Mero,52 So.2d 679, 680 (Fla. 1951), wherein the Court stated: "A public officer is not relieved of liability of loss because of theft but when a public officer holds public funds in trust such officer is a voluntary trustee, since he is not required to hold office." The Court went on to conclude that "[v]oluntary trustees are not personally liable if they exercise the care and skill of a prudent man in the protection of the trust." Id.
Where the public officer has the responsibility to account for and maintain a fund and to give a bond as security therefor, the duty placed upon the officer is an absolute one as to shortages in the public fund. This rule is set forth in the case of Thomas v. Carlton, 143 So. 780, 785 (Fla. 1932), wherein it is stated:
 The great weight of authority sustains the following propositions with respect to the liability of a public officer and his sureties for the loss of public moneys: Where the statute in direct terms or from its general tenor imposes the duty to pay over public money received and held as such and no condition limiting that obligation is discoverable in the statute, the obligation thus imposed and assumed by the officer will be deemed to be absolute, and the fact that the money has been lost either through theft, robbery, bank failure, accidental fire, or other cause, without his fault, does not constitute a defense to an action for its recovery. The rule of the responsibility of a bailee for hire is not applicable to such a case. When the condition of the officer's bond is that he will faithfully discharge the duties of the office, and when the statute, as above stated, imposes the duty of payment or accountability for the money without condition, the obligors of the bond are subject to the same high degree of responsibility. The reasons upon which these propositions rest are to be found in the unqualified terms of the contract and in considerations of public policy.
Thus, the Court concluded that the statutory duty to account for and maintain the fund, and to return the fund in the amount originally established, is an absolute duty and is unconditional. This duty is placed upon the Treasurer as to funds in the State Treasury including all trust funds in the Treasury. Where the statutes, however, direct the manner and deposit of public funds, compliance with such statutes serves to relieve the public officer of liability when loss occurs that is not the result of a breach of a fiduciary duty. In Mordt v. Robinson, 156 So. 535 (Fla. 1934), the Florida Supreme Court had before it a case involving a clerk of the court who had been holding moneys in the registry of the court and had deposited such moneys in a state bank which had been officially designated as a lawful depository of public funds pursuant to statute. The bank had subsequently become insolvent and suit was brought by the individual owning the moneys held by the clerk and deposited in the bank. The Court concluded that the effect of the statute authorizing the clerk to deposit funds coming into his custody as a public official in designated public depositories absolved such officer from liability for loss of such funds if he had exercised due care and deligence by depositing such funds in an officially designated public depository as authorized under the statute.
Based upon these principles of law, I am of the opinion that, as to moneys in the State Treasury and as to moneys in the investment account of the State Board of Administration when the Treasurer is acting as Treasurer ex officio of the Board, if the Treasurer complies with the statutes directing the deposit and disbursement of public funds, he is absolved of liability provided he exercises the care and skill of a prudent man in the protection of the trust. In this regard, I would note that when subsection (4) of s.215.50, F.S., was originally added to the statute in 1982, the following language was included: "If the securities are so registered and insured upon registration and collateralized 100 percent or more upon lending, the State Treasurer shall not be personally liable for any losses incurred solely from registering securities in the name of a third party nominee from such operations." Chapter 82-45, Laws of Florida. During the legislative session the following year, the above quoted language was deleted from the statute. Chapter 83-60, Laws of Florida. The title to that law stated that the act was amending the statute to "reliev[e] the Treasurer of liability with respect to certain securities." In determining legislative intent, the title of an act may be used. See, Parker v. State, 406 So.2d 1089 (Fla. 1981); Carter v. Government Employees Insurance Company, 377 So.2d 242 (1 D.C.A.Fla., 1979). Thus, the Legislature has expressed an intent not to impose personal liability upon the Treasurer unless he acts in dereliction of some statutory duty.
QUESTION SIX
The first part of your question relating to the liability of the Treasurer with regard to securities purchased with money from the Florida Retirement System Trust Fund is addressed to the extent possible in Question Five. The second part of this question must again be answered generally in the absence of a specific legal issue and specific factual circumstances.
As discussed earlier, the investment of available funds in the Florida Retirement System Trust Fund has been statutorily vested in the State Board of Administration. In AGO 47-143, May 29, 1947, Biennial Report of the Attorney General, 1947-1948, p. 19, this office had before its consideration a provision of the 1885 Constitution (s. 24, Art. IV) which required the Treasurer to receive and keep all funds, bonds and other securities in such manner as may be prescribed by law. The Treasurer in that opinion had queried whether he was permitted to deliver for safekeeping certain United States government securities to a federal reserve bank. This office concluded that, as the law was silent on the matter of where the state treasurer must keep such securities, the treasurer was not prohibited from keeping such securities in a Federal Reserve Bank provided that if such securities were kept at a place other than that provided by the state, the state treasurer assumed the risk of personal liability if a loss occurred. The state statutes regarding the deposit and investment of state funds and securities have undergone significant changes since that opinion was rendered. With regard to the Treasurer's personal liability for state funds and securities, see again, Mordt v. Robinson, supra, holding that a public officer is absolved of personal liability for loss occurring to public funds when in compliance with statutory requirements for handling of public funds if he has exercised due care and diligence towards such funds. See also, AGO 75-295.
The 1968 Constitution presently provides that the Treasurer "shall keep all state funds and securities." (e.s.) Section 4(e), Art. IV, State Const.[1] In the materials accompanying your request, there is substantial discussion of the meaning and scope of this constitutional provision (e.g., whether this provision means that the Treasurer must have physical custody of all state funds and securities). Initially it must be noted that this office must presume the validity of the statutes directing the investment and control of the trust funds vested in the State Board of Administration. See, Village of North Palm Beach v. Mason,167 So.2d 721 (Fla. 1964).
Subsequent to the rendition of AGO 47-143, discussed supra, the Legislature enacted the provisions of ss. 215.44-215.53, authorizing the State Board of Administration, except as otherwise provided by the Constitution and subject to any limitations of a trust agreement relating to a trust fund, to invest all the funds in the System Trust Fund and all other funds specifically required by law to be invested by the board pursuant to ss. 215.44-215.53, F.S., as amended, to the fullest extent consistent with the cash requirements and investments objectives of the particular trust fund. See, s. 215.44(1), F.S. Section 215.47, F.S., as amended by s. 54, Ch. 86-152 and s. 3, Ch. 86-236, Laws of Florida, sets forth the types of authorized securities in which the Board of Administration may invest available funds of system trust fund. Section 215.50(1), F.S., provides in pertinent part that all such securities purchased or held may with the approval of the Board of Administration, be in the custody of the State Treasurer or the Treasurer as treasurer ex officio of the board or may "be deposited with a bank or trust company to be held in safekeeping by such bank or trust company for the collection of principal and interest or of the proceeds of the sale thereof." In AGO 77-62, this office stated that this statute provided the sole alternative to actual physical custody of the securities by the Board of Administration or the State Treasurer. Under the factual circumstances considered in AGO 77-62, the State Board of Administration had undertaken to purchase securities as part of an investment program involving a repurchase agreement in which the original seller of securities agreed to buy back the securities at a date set forth in the agreement. Under the plan, the board never actually received physical custody of the securities; instead such securities were retained either by the original seller or by a third party financial institution during the entire period *2211 of time they were owned by the board. That opinion concluded that the statute did not, by its terms, require that the board obtain or receive trust receipts setting forth the particulars of a "safekeeping agreement" governing securities held for the board by an authorized financial institution, although presumably some adequate record of the transaction would be kept by the board in its possession and as a part of its records. The opinion also concluded "that there is no obstacle imposed by Ch. 215, F.S., to the board's purchase of treasury bills, or any other form of direct or guaranteed obligations of the United States, issued, recorded, and accounted for by means of the new so-called book-entry system, even though such obligations are not individually issued and serialized." The opinion, however, noted "that a `safekeeping agreement' or other record of a given transaction should be in the possession of the board and a part of its records and investment accounts; indeed, such data should be the basis for, and necessary in, the accounting procedures and the reports to interested state officials and agencies prescribed by the statute." Citing, s. 215.51, F.S., imposing a duty on the board to see that the moneys invested are at all times handled in the best interests of the state.
In an informal opinion to Bill Gunter, as State Treasurer, dated May 8, 1981, this office advised the Treasurer that Section215.50, F.S. (1980 Supp.), did not appear by its terms, to authorize a financial investment arrangement in which securities of the state would be registered in the name of a third party nominee in order to be loaned to others for remuneration. During the following legislative session, Ch. 82-45, Laws of Florida, was enacted into law. Section 4. of that law which added subsection (5) to s. 215.50, F.S., in pertinent part, provides: "Securities that the board selects to use for options operations under s.215.45 or for lending under s. 215.455 may be registered by the State Treasurer in the name of a third party nominee in order to facilitate such operations." Thus the statute now specifically authorizes the registration of investment securities in the name of third party nominees for ending under s. 215.455 or for option operations under s. 215.45.
In conclusion, I am of the opinion that the investment of available funds of the Retirement System Trust Fund by the State Board of Administration must be in compliance with the statutory provisions of ss. 215.44-215.53, F.S. And see, s. 215.52, F.S., which provides: "The board shall have the power and authority to make reasonable rules and regulations necessary to carry out the provisions of ss. 215.44-215.53." Such regulatory power must in accordance with and necessary to implement and effectuate an express statutory power of the board. The State Treasurer, acting with the approval of the State Board of Administration, is charged by s. 18.10, F.S., with the duty to deposit the money of the state or any money in the State Treasury in certain qualified public depositories of the state. Section 18.10 imposes the duty on the Treasurer to keep the board advised as to the amounts of such money at all times. It is the duty of the board, consistent with the cash requirements of the state, to keep such money fully invested or deposited in interest-bearing time deposits or savings accounts. The moneys of the Florida Retirement System Trust Fund are to be invested by the State Board of Administration, which includes the State Treasurer as a member. Section 215.44(1), F.S. The duties and responsibilities of the State Treasurer, as a member of the State Board of Administration, with regard to securities purchased with money from the Florida Retirement System Trust Fund are set forth in the investment provisions of ss.215.44-215.53, F.S., as amended. The board is statutorily charged by s. 215.44 to invest moneys of the trust fund to the fullest extent that is consistent with the cash requirements, trust agreement, and investment objectives of the fund. Specifically, with regard to securities purchased by the board, the Treasurer with approval of the board may have custody of the securities or such securities may be deposited with a bank or trust company to be held in safekeeping by such bank or trust company. Section215.50(1), F.S. The board has a duty to see that the moneys invested are at all times handled in the best interests of the state. Section 215.44(2)(a), F.S.
QUESTION SEVEN
You have asked who the governmental party or parties are for a number of agreements relating to investment funds and securities under the control of the State Board of Administration and whether there is statutory authority to enter into such agreements. The investment demand account with Atlantic National Bank was entered into by the State Board of Administration as the governmental party to the agreement. This investment account is the account into which the State Treasurer transfers available funds from the Florida Retirement System Trust Fund for investment purposes by the board. The Securities Custody and Servicing Agreement was entered into by the State Board of Administration and the State Treasurer, "acting solely in his capacity as treasurer ex officio of the Board and as custodian of the securities owned by the [System Trust] Fund. . . ." See, Securities Custody and Servicing Agreement, p. 1. The State Board of Administration is the governmental party to the Securities Lending Authorization Agreement as well as to the Three Party Agreement.
The powers and duties of the State Board of Administration in relation to the investment of Florida Retirement System Trust Funds are generally set forth in s. 215.44, F.S. Subsection (1) of s. 215.44 requires the board to "invest all the funds in the System Trust Fund, as defined in s. 121.021(36), . . . to the fullest extent that is consistent with the cash requirements, trust agreement, and investment objectives of the fund." See also, s. 121.151, F.S., requiring the State Board of Administration to invest and reinvest available funds of the System Trust Fund in accordance with the provisions of ss. 215.44-215.53, F.S. Subsection (2)(a) of s. 215.44 grants the Board "the power to make purchases, sales, exchanges, investments, and reinvestments for and on behalf of the funds. . . ."; and paragraph (b) authorizes the board to retain investment advisers or managers, or both, external to in-house staff, to assist the board in carrying out its investment powers. Subsection (7) of s. 215.44, F.S., provides: "Investment and debt purchasing procedures and contracts of funds held in trust by the State Board of Administration, whether directly or incidentally related to the investment or debt transactions, are exempt from the provisions of chapter 287." (e.s.)
Pertaining to specific powers of the board to undertake certain investment procedures, s. 215.45, F.S., provides in relevant part that "[s]ecurities or investments purchased or held under the provisions of this chapter may be sold or exchanged for other securities or investments. . . ." Section 215.455, F.S., authorizes the loan of securities: "Securities or investments purchased or held under the provisions of this chapter may be loaned to securities dealers, provided the loan is collateralized" as provided therein. Section 215.47, F.S., as amended, after listing a number of different types of securities authorized for investment provides in subsection (6) that "[i]nvestments in any securities authorized by this section may be under repurchase agreements or reverse repurchase agreements."
Section 215.50(1), F.S., provides:
 All securities purchased or held may, with the approval of the board, be in the custody of the Treasurer or the Treasurer as treasurer ex officio of the board, or be deposited with a bank or trust company to be held in safekeeping by such bank or trust company for the collection of principal and interest or of the proceeds of the sale thereof.
Finally, for implementing these various powers and duties, s.215.52, F.S., gives the Board of Administration the power and authority to make reasonable rules and regulations necessary to carry out the provisions of ss. 215.44-215.53, F.S. Based upon these statutory grants of powers and duties to the State Board of Administration, I am of the opinion that the Board is authorized to enter into agreements for purposes of investing available funds of the System Trust Fund, and that the State Treasurer as treasurer ex officio of the Board is authorized to enter into securities custody and servicing agreements as a party to such agreements.
QUESTION EIGHT
My research has not revealed, nor has any statute been brought to my attention, which requires securities purchased pursuant to the provisions of ss. 215.44-215.53, F.S., to be collateralized when the Treasurer relinquishes physical custody of such securities to a bank for safekeeping or for the collection of principal or interest or dividends or proceeds of sale. Subsection (1) of s.215.50, F.S., in pertinent part, provides: "All securities purchased or held may, with the approval of the board, . . . be deposited with a bank or trust company to be held in safekeeping by such bank or trust company for the collection of principal and interest or of the proceeds of the sale thereof." This statute does not require such bank or trust company holding such securities in safekeeping to deposit collateral with the Treasurer or with another bank. Compare the requirement contained in subsection (3) of s. 215.50, F.S., that a commercial bank in which the Treasurer deposits interest, dividends, prepayments, maturities, proceeds from sales and other income accruing from securities owned by the Florida Retirement System Trust Fund shall offer satisfactory collateral security as provided by Ch. 280, F.S. Had the Legislature intended to impose a requirement that banks or trust companies holding securities purchased by the board provide collateral security, it could have easily done so in a manner similar to the provisions of s. 215.50(3), F.S., for income accruing from securities in the custody of the Treasurer and deposited in a commercial bank to the credit of the Board of Administration. Cf., AGO 77-62, discussed supra, which concluded that the State Board of Administration is not required by Ch. 215, F.S., to obtain written trust receipts detailing the particulars of a "safekeeping agreement" with an authorized financial institution relating to securities deposited with it by the board to be held in safekeeping by such financial institution or the collection of principal and interest or of the proceeds of the sale thereof.
Section 215.455, F.S., however, provides a specific requirement as to the collaterization of securities loaned to securities dealers. Securities or investments purchased or held under the provisions of Ch. 215, "may be loaned to securities dealers, provided the loan is collateralized by cash or United States Government securities having a market value of at least 100 percent of the market value of the securities loaned." This office has been advised by the State Board of Administration that the loan operations of securities are in compliance with the requirements of s. 215.455, F.S.
Therefore, the provisions of ss. 215.44-215.53, F.S., do not appear to require that securities purchased or held that are deposited with a bank or trust company be held in safekeeping pursuant to s. 215.50(1), F.S., and which are not loaned to security dealers pursuant to s. 215.455, F.S., must have collateral deposited with the Treasurer or with another bank.
QUESTION NINE
Chapter 280, F.S., entitled the "Florida Security for Public Deposits Act," sets forth requirements for the deposit of public funds in banking institutions. Subsection (3) of s. 280.02, F.S., defines "Public deposit" to mean
 the moneys of the state or of any county, school district, community college district, special district, metropolitan government, or municipality, including agencies, boards, bureaus, commissions, and institutions of any of the foregoing, or of any court, and includes the moneys of all county officers, including constitutional officers, that are placed on deposit in a bank or savings association, including, but not limited to, time deposit accounts, demand deposit accounts, and certificates of deposit. All certificates of deposit, whether negotiable or nonnegotiable, shall be considered deposits and shall be subject to the provisions of this chapter.
Subsection (5) of this statute defines "Qualified public depository" to mean
 any bank or savings association organized and existing under the laws of this state and any bank or savings association organized under the laws of the United States that has its principal place of business in this state or has a branch office which is authorized under the laws of this state or of the United States to receive deposits in this state, that meets all of the requirements of this chapter, and that has been designated by the Treasurer as a qualified public depository.
And see, s. 280.02(6), F.S., as amended by Ch. 86-84, Laws of Florida, defining the term "required collateral" of a qualified public depository.
Initially, it should be noted that Citibank is not a bank or savings association organized and existing under the laws of this state; it does not have its principal place of business in this state, nor does it have a branch office in this state to receive deposits. Therefore, Citibank does not qualify as a "qualified public depository" as defined in s. 280.02(5), F.S.
The provisions of Ch. 280, F.S., as amended, in general require that all "public deposits" be made in "qualified public depositories." These "qualified public depositories" are required to deposit with the Treasurer, or, with the approval of the Treasurer, deposit with another bank, savings association or trust company, eligible collateral equal to or in excess of the required collateral of the depository to be held subject to his order. Section 280.04, F.S., as amended by s. 2, Ch. 86-84, Laws of Florida. See, ss. 280.13 and 280.14, F.S., respectively defining collateral eligible for pledge by banks and by savings associations. As set forth above, "public deposit" is defined by the act to mean the moneys of the state and other public agencies that are placed on deposit in a bank or savings association, including but not limited to, time deposit accounts, demand deposit accounts and certificates of deposit. Black's Law Dictionary 395 (5th ed. 1979) defines the term "deposit" relevant to its use herein as "[t]he act of placing money in the custody of a bank or banker, for safety or convenience, to be withdrawn at the will of the depositor or under rules and regulations agreed on. Also, the money so deposited, or the credit which the depositor receives for it." Under Florida law when used in connection with a banking transaction, the term "deposit" denotes a contractual relationship between the depositor and the bank which receives money or a thing upon the agreement that the deposit will be paid out on the order of the depositor or returned to him on demand. McCrory Stores Corporation v. Tunnicliffe,140 So. 806 (Fla. 1932); 5 Fla.Jur.2d Banks s. 144. And see, AGO 83-60 (certificate of deposit is simply a written acknowledgement of a bank or a savings and loan association that it has received from a named person a specified sum of money as a deposit).
The investment of public funds as distinguished from the deposit of such funds involves a different concept with regard to the utilization of such funds, and the investment of public funds is controlled by separate statutory provisions prescribing such use. The term "investment" is defined by Black's Law Dictionary 741 (5th ed. 1979) as follows: "An expenditure to acquire property or other assets in order to produce revenue; the asset so acquired. The placing of capital or laying out of money in a way intended to secure income or profit from its employment." Chapter 280, F.S., by its terms does not appear to apply to investments of public funds. The definition of "public deposit" does not encompass the authorized investment of public funds, and thus the provisions of ss. 215.44-215.53, F.S., as amended, are not, in my opinion, by their own terms, applicable to the deposit of public funds. There is no requirement that banks or trust companies holding securities purchased by the State Board of Administration pursuant to the provisions of ss. 215.44-215.53, F.S., and being utilized for options operations under s. 215.45, F.S., or lending under s. 215.455, F.S., or other authorized activities, offer satisfactory collateral. Cf., subsection (3) of s. 215.50, F.S., permitting the Treasurer, without having to first deposit such income in the Retirement System Trust Fund and then issue a state warrant before deposit and investment of such funds can be effectuated, to directly deposit income from securities in his custody in a commercial bank to the credit of the State Board of Administration requiring satisfactory collateral security for such accounts as provided by Ch. 280, F.S. The statutory rule of construction, expressio unius est exclusio alterius, the express mention of one thing implies the exclusion of all other things not mentioned, is applicable to this situation. See, Thayer v. State, 335 So.2d 815
(Fla. 1976); Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952); Ideal Farms Drainage Dist. v. Certain Lands, 19 So.2d 234
(Fla. 1944). Had the Legislature intended to impose a requirement on banks and trust companies holding securities on behalf of the Board of Administration, the provisions of s. 215.50, F.S., or other statute could have easily imposed such a requirement. Legislative intent must *2214 be primarily determined from the language of the statute itself and not from conjecture aliunde. Maryland Casualty Co. v. Sutherland, 169 So. 679 (Fla. 1936). In the absence of such statutory requirement, it would appear that there is no legislative directive or intent that such condition be imposed.
I am therefore of the opinion that a bank or trust company holding securities of the State Board of Administration pursuant to s.215.50(1), F.S., is not required to provide collateral security. If, however, money from the collection of principal and interest or of the proceeds of the sale thereof is not reinvested by the Board of Administration or its authorized agents, then such income should be deposited to the credit of the State Board of Administration in a bank, which fulfills the requirements of Ch.280, F.S., as amended.
QUESTION TEN
Subsection (3) of s. 215.50, F.S., provides:
 The Treasurer, as custodian of securities owned by the Florida Retirement System Trust Fund and the Florida Survivor Benefit Trust Fund, shall collect the interest, dividends, prepayments, maturities, proceeds from sales, and other income accruing from such assets. As such income is collected by the Treasurer, it shall be deposited directly into a commercial bank to the credit of the State Board of Administration. Such bank accounts as may be required for this purpose shall offer satisfactory collateral security as provided by chapter 280. In the event funds so deposited according to the provisions of this section are required for the purpose of paying benefits or other operational needs, the State Board of Administration shall remit to the Florida Retirement System Trust Fund in the State Treasury such amounts as may be requested by the director of the Division of Retirement.
The statute authorizes the Treasurer to directly deposit into a commercial bank to the credit of the State Board of Administration the interest, dividends, prepayments, maturities, proceeds from sales, and other income accruing from securities of the Florida Retirement System Trust fund that the Treasurer has in his custody. See the bill summary for PCB # 18 (enacted as Ch. 80-317, Laws of Florida, and consolidated with Ch. 80-242, Laws of Florida, and subsequently codified as subsection[3] of s. 215.50, F.S.). In the absence of such authorization, the Treasurer would be required to deposit such income into the retirement system trust fund in the State Treasury. The Division of Retirement would then have to submit a voucher to the State Comptroller in order for the Comptroller to issue a warrant to the State Board of Administration. Only when the warrant had been deposited in a commercial bank to the credit of the board's investment account, would such income be available for the board to invest. The procedure authorized by subsection (3) of s. 215.50, F.S., streamlines the transfer and deposit of income generated by system trust fund securities in the custody of the Treasurer to facilitate reinvestment.
Considering all the provisions of s. 215.50, F.S., in pari materia in order to construe the statute as a consistent whole, in harmony with common sense and reason, and giving effect to every part, I am unable to perceive any conflict among the various provisions of this statute, nor can I construe the statute in a manner to reach the conclusion that the Legislature by enacting this procedure intended to impliedly repeal other provisions of this statute or other statutes pertaining to the investment powers of the State Board of Administration. As to guiding rules of statutory construction, see, Villery v. Florida Parole and Probation Commission, 396 So.2d 1107 (Fla. 1980) (where possible, the court must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another); Tower Credit Corporation v. State, 187 So.2d 923 (4 D.C.A.Fla., 1966) (if two statutes may operate on same subject without positive inconsistencies or repugnance in their practical effect and consequence, each should be given effect designed for them); 82 C.J.S. Statutes s. 384. These rules of construction are all the more compelling where as here the provisions in question involve different subsections of the same statute.
Moreover, I am unable to conclude that the Legislature intended by the addition of subsection (3) of s. 215.50, F.S., to require that all securities of the Florida Retirement System Trust be held solely in the physical custody of the Treasurer. Such a conclusion would render the language of subsection (1) permitting the board to deposit securities with a bank or trust company for the collection of principal and interest or of the proceeds of the sale thereof meaningless, as well as in effect impliedly repealing those provisions authorizing the board to use securities for options operation under s. 215.45, F.S., and lending under s. 215.455, F.S. In determining legislative intent, the courts will examine the entire statute under consideration. State v. Robarge,450 So.2d 855 (Fla. 1984). Furthermore, subsection (4) of s.215.50, F.S., authorizing the Treasurer to register securities in the name of a third-party nominee in order to facilitate investment operations under s. 215.45, F.S., or s. 215.455, F.S., was added subsequent to the adoption of subsection (3), thus evincing a legislative intent that such investment procedures pursuant to those provisions retained continued legal viability subsequent to the addition of subsection (3) to s. 215.50, F.S. Accordingly I am of the opinion that subsection (3) of s. 215.50, F.S., authorizes the State Treasurer to directly deposit interest, dividends, prepayments, maturities, proceeds from sales, and other income accruing from securities of the Board of Administration of which he has custody in a commercial bank that has offered satisfactory collateral security as provided by Ch. 280, F.S. This subsection does not operate to limit the investment authority of the board pursuant to other provisions of s. 215.50 or to impliedly repeal such other provisions.
QUESTION ELEVEN
The legal status of the State of Florida with regard to the recovery of securities and money in the case of a failure of a bank or depository holding securities in safekeeping raises mixed questions of fact and law that are beyond the authority of this office to determine. Any substantive response would be purely conjectural based upon variable and unknown factual circumstances. This office must therefore decline to comment on this issue. Ultimately, such questions must be resolved by the courts. The Board of Administration, however, is charged with the duty of seeing that moneys invested under the provisions of ss.215.44-215.53, F.S., are at all times handled in the best interests of the state. Section 215.44(2)(a), F.S. Subsection (5) of s. 215.44 requires the Board to annually provide the Legislature with "a report which includes an analysis of fund performance, annual beginning and ending portfolio distribution, changes in investment policy, compliance with investment strategy, and an analysis of the cost, return, and risk of each portfolio under internal or external fund management." Security requirements for the investment of the Florida Retirement System Trust Fund are a prerogative of the Legislature.
QUESTION TWELVE
The Florida Retirement System Act, Ch. 121, F.S., is a statutorily authorized retirement plan to provide benefits to covered members under the system upon their retirement from public employment or office. The Florida Retirement System Trust Fund was established to provide a source of funds to pay the benefits to officers and employees who have vested retirement rights pursuant to Ch. 121, F.S. The liability of the State of Florida for payment of benefits to which members may become entitled is dependent upon the nature of the vested legal rights that such members possess.
In the case of Florida Sheriffs Association v. Department of Administration, 408 So.2d 1033 (Fla. 1981), the Florida Supreme Court considered the nature of Florida's retirement benefits granted under Ch. 121, F.S. The specific legal issue before the Court was whether the Legislature could modify benefits to certain members of the retirement plan by prospectively reducing a special risk credit such members could earn towards retirement. The appellants had contended that the Legislature is contractually bound by its prior legislative act, and any reduction in the amount present employees can earn toward future retirement is a constitutionally prohibited impairment of the employees' contract with the state. The Court held that the Legislature has the authority to prospectively modify or amend the mandatory, noncontributory retirement plan. The crux of the Court's holding was that the Legislature could prospectively modify retirement plans as to benefits that had not become a vested right. Although the Court made it clear that the Legislature can alter retirement benefits of active employees, "once a participating member reaches retirement status, the benefits under the terms of the act in effect at the time of the employee's retirement vest. The contractual relationship may not thereafter be affected or adversely altered by subsequent statutory enactments." Florida Sheriffs Association v. Department of Administration, supra at 1036. The Court at 1037, however, noted:
 We stress that the rights provision [s. 121.011(3), F.S.] was not intended to bind future legislatures from prospectively altering benefits which accrue for future state service. To hold otherwise would mean that no future legislature could in any way alter future benefits of active employees for future services, except in a manner favorable to the employee. This view would, in effect, impose on the state the permanent responsibility for maintaining a retirement plan which could never be amended or repealed irrespective of the fiscal condition of this state. Such a decision could lead to fiscal irresponsibility.
See also, City of Jacksonville Beach v. State ex rel. O'Donald,151 So.2d 430 (Fla. 1963). Thus, the state has a contractual obligation with those members whose benefits have vested at retirement which cannot be legislatively impaired. Cf., Bishop v. State, Division of Retirement, 413 So.2d 776 (1 D.C.A.Fla., 1982) (nothing in statutes guaranteed to retired teachers an annual retirement allowance equal to one half of their average final composition, but, rather, there was a mere expectancy, and thus where teachers would receive actuarial equivalents of their accumulated contributions, there was no violation of statute and failure to achieve expectancy because of shortfall in annuity was not breach of contract).
Applying the principles set forth above to your inquiry, I am of the opinion that the Florida Retirement System Trust Fund was established in order to create a fund from which to pay benefits due to members or beneficiaries whose rights to such benefits have vested. The sufficiency or lack thereof would not appear to affect the liability of the state in relation to the payment of contractually vested benefits. Cf., s. 121.061(3), F.S., providing that should any state agency fail to make payments to the Florida Retirement System, the administrator shall report this to the Governor and certify the amounts due to the system trust fund to the Executive Office of the Governor. If the state agency cannot pay the amounts due, then the amount due is paid from the general revenue fund of the state. While the actuarial and fiscal soundness of the retirement system trust fund is a matter of importance to the Legislature and the agencies to which it has delegated the management of the fund, such issues do not in my opinion affect the liability of the state as to its obligation to pay vested retirement benefits. The Legislature may prospectively amend the retirement system in accordance with judicial principles pertaining to constitutional provisions which protect the vested contractual rights of the members and beneficiaries. However, the liability of the State of Florida in any particular instance represents a mixed question of law and fact which must be determined by the courts, not this office.
In summary, I am therefore of the opinion:
 1. State retirement system trust funds which are derived from state agency contributions are "state funds" as that term is used in s. 4(e), Art. IV, State Const.
 2. Securities purchased with funds from the system trust fund which represent that portion of the fund derived from state contributions are "state securities".
 3. Securities purchased with funds from the system trust fund which represent that portion of the fund derived from state contributions are owned by the Florida Retirement System Trust Fund and should be registered in the name of the State Board of Administration, State of Florida, when not being used in options or lending operations under s. 215.45 and s. 215.455, F.S.
 4. The duty of the Treasurer for money in the Florida Retirement System Trust Fund is the same for all money in the State Treasury and other trust funds in the Treasury, which is to account for all state funds and securities and to deposit and invest such funds in accordance with the requirements of law. The duty of the Treasurer when money has been disbursed to the State Board of Administration for investment purposes as a member of the board is to see that such money is invested pursuant to the provisions of ss. 215.44-215.53, F.S., as amended, and that such money is at all times handled in the best interests of the state.
 5. The liability of the Treasurer in regard to disbursement and investment of moneys of the Florida Retirement System Trust Fund presents mixed questions of law and fact which this office cannot resolve. However, the Treasurer is required to comply with the statutes directing the deposit and investment of public funds and to exercise the care and skill of a prudent man in the protection of a public trust.
 6. The investment and custody of available funds of the Florida Retirement System Trust Fund must be in compliance with the statutory provisions of ss. 215.44-215.53, F.S., as amended.
 7. The State Board of Administration and the Treasurer, as ex officio treasurer of the board, is authorized to enter into contracts for purposes of investing available funds of the Florida Retirement System Trust Fund pursuant to ss. 215.44-215.53, F.S., as amended.
 8. Securities purchased or held pursuant to ss. 215.44-215.53, F.S., as amended, that are deposited with a bank or trust company under s. 215.50(1), F.S., are not required to be collateralized, by a security deposit with the Treasurer or another bank.
 9. A bank or trust company holding securities of the State Board of Administration for investment purposes pursuant to s. 215.50(1), F.S., is not required to provide collateral security as provided by Ch. 280, F.S. Dividends, interest, or proceeds of the sale of securities that are not reinvested must be deposited in a qualified public depository.
 10. Subsection (3) of s. 215.50, F.S., authorizes the State Treasurer to directly deposit interest, dividends, prepayments, maturities, proceeds from sales, and other income accruing from securities of the Board of Administration of which he has custody in a commercial bank that has offered satisfactory collateral security as provided by Ch. 280, F.S.
 11. The legal status of the State of Florida with regard to securities which have been delivered for investment purposes is a mixed question of law and fact which the courts must determine. The State Board of Administration is charged with the duty of seeing that moneys invested are at all times handled in the best interests of the state.
 12. The State of Florida is responsible for paying benefits due to members or beneficiaries whose rights to such benefits have vested. The Legislature may prospectively amend the retirement system in accordance with judicial principles pertaining to pertinent constitutional provisions, which protect vested contractual rights of the members and beneficiaries.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General
[1] See the commentary to this provision which states: "Basically, this new subsection is a restatement of Article IV, Section 24 of the 1885 Constitution and Article VII, Section 4 of the Constitution of 1868, except that the 1868 document provided for the Treasurer to be appointed by the Governor." Commentary, 26 F.S.A., s. 4(e), Art. IV, State Const.